FILED

2010 Nov-15  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **TOMMIE G. SAVAGE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. CV-08-S-2189-NE** |
| ) | |
| **PETE GEREN, Secretary of the** ) | |
| **Army,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tommie Savage, filed this case on November 21, 2008, asserting claims against her employer, Pete Geren, the Secretary of the United States Army, for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981a, as well as for violations of the Privacy Act of 1974, as amended, 5 U.S.C. § 552a.[1] The case currently is before the court on the following motions: (1) defendant's motion to dismiss, or, in the alternative, for summary judgment on all of plaintiff's claims;[2] (2) plaintiff's motion to dismiss defendant's affirmative defense of accord and satisfaction, or, in the alternative, for summary judgment in her favor on all of her claims;[3] and (3) defendant's motion to

---

[1] *See* doc. no. 1 (Complaint). 42 U.S.C. § 1981a allows a Title VII plaintiff to recover compensatory and punitive damages.

[2] Doc. no. 67.

[3] Doc. no. 73.

strike the affidavit of Mark Conrad, or, in the alternative, to disqualify Mr. Conrad

as plaintiff's attorney.[4]  Upon consideration of the motions, pleadings, briefs, and

evidentiary submissions, the court concludes that plaintiff's motion to dismiss

defendant's affirmative defense of accord and satisfaction, and defendant's motion

to strike the affidavit of Mark Conrad or, in the alternative, to disqualify Mr. Conrad

from further representation of plaintiff, should be denied as moot.   Plaintiff's

alternative motion for summary judgment on all of her claims will be denied.

Defendant's motion to dismiss, or, in the alternative, for summary judgment, will be

granted.

## I. STANDARDS OF REVIEW

### A.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a

complaint for, among other reasons, "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).[5]  This rule must be read together with Rule 8(a),

---

[4]Doc. no. 71.

[5] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the
responsive pleading if one is required. But a party may assert the following
defenses by motion:

    (1) lack of subject-matter jurisdiction;

    (2) lack of personal jurisdiction;

which requires that a pleading contain only a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129

S. Ct.  1937, 1949 (2009) (citations omitted).  The Supreme Court elaborated this

standard in its *Iqbal* opinion, as follows:

> A pleading that offers "labels and conclusions" or "a formulaic
> recitation of the elements of a cause of action will not do." [*Twombly*,
> 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked
> assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of
> Civil Procedure 12(b)(6), for failure to state a claim upon which relief

---

    (3) improper venue;

    (4) insufficient process;

    (5) insufficient service of process;

    (6) failure to state a claim upon which relief can be granted; and

    (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a
responsive pleading is allowed. If a pleading sets out a claim for relief that
does not require a responsive pleading, an opposing party may assert at trial
any defense to that claim. No defense or objection is waived by joining it
with one or more other defenses or objections in a responsive pleading or in
a motion.

Fed. R. Civ. P. 12(b).

can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they

must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

## B.    Motions for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321,

5

1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d 1295, 1297-98 (M.D. Fla. 2008).  *See also American Bankers Ins. Group v. United*

6

*States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's disposition of cross-motions for summary judgment de novo, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II. SUMMARY OF FACTS

Plaintiff, Tommie G. Savage, began working for the United States Army Corps of Engineers ("the Corps") in Huntsville, Alabama, in 1992, in a temporary position within the personnel department. The Corps hired her for a permanent position as a Procurement Clerk in 1993 and soon thereafter promoted her to a Contract Specialist.[6] In 1997, plaintiff was promoted to the position of Contract Officer, which was at Grade Level GS-12.[7] In approximately 2004, plaintiff was promoted to a Grade Level GS-13, but she remained in the position of Contract Officer.[8] Plaintiff never received any disciplinary action from the Corps at any time relevant to this lawsuit.[9]

Through Fiscal Year 2006, the Corps used the Total Army Performance

---

[6] Doc. no. 47 (defendant's evidentiary submission), Tab 2 (Deposition of Tommie G. Savage), at 32-35.

[7] *Id.* at 37-37, 43-45.

[8] *Id.* at 43-44.

[9] *Id.* at 45-47. Plaintiff was charged with AWOL in 2009, and her employment eventually was terminated due to her failure to return to work. Plaintiff's termination is not an issue in this lawsuit, however. *Id.*

7

Evaluation System, or "TAPES," to evaluate its employees.[10]  Kenneth Goddard, plaintiff's immediate supervisor from 2004 to 2007, consistently gave plaintiff the rating of "Excellent," the highest of five possible ratings under the TAPES system.[11] In fact, the vast majority of employees, possibly even up to 95%, consistently received an "Excellent" rating under TAPES.[12]

In fiscal year 2007, the Corps switched to a performance-based rating system called the National Security Personnel System ("NSPS").[13]  The Corps notified employees that they should not expect to receive a top rating every year under NSPS like they had under TAPES, and that a rating of "3" out of a possible score of "5" meant that the employee was considered a "Valued Employee."[14]  The majority of employees received a "3" rating under TAPES.[15]  To be rated higher than a "3," the employee had to demonstrate not only that she performed her job duties adequately, but also that she contributed something additional of value to the organization.[16]

---

[10]*Id.* at 227-30.

[11]*Id.* at 137-40.

[12]*Id.* at 230-32; defendant's evidentiary submission, Tab 4 (Deposition of Sharon Butler), at 215-16.

[13]Defendant's evidentiary submission, Tab 12 (Declaration of Norbert S. Doyle, Jr.), at ¶ 4.

[14]*Id.* at ¶ 5.

[15]Butler Deposition, at 185.

[16]Defendant's evidentiary submission, Tab 1 (Transcript of June 24, 2008 Fact Finding Conference by the Department of Defense Investigations and Resolutions Division, in Agency Complaint Number ARCEHUNTV08JAN0560), at 52-54.

8

Under NSPS, all funds allocated for employee bonuses were placed in a "pay pool" and distributed among employees based upon the employees' ratings. Depending on her rating, an employee could receive between one and six shares from the pay pool, and each share was worth a certain amount, depending on the employee's salary. Employees receiving a rating of 2.51 to 3.00 would receive one share; employees receiving a rating of 3.01 to 3.50 would receive two shares; employees receiving a rating of 3.51 to 4.0 would receive three shares; employees receiving a rating of 4.01 to 4.50 would receive four shares; employees receiving a rating of 4.51 to 4.75 would receive five shares; and employees receiving a rating of 4.76 to 5.00 would receive six shares.[17]

The processing of employee ratings under NSPS requires several steps. First, the employee provides input through a written assessment detailing her objectives and accomplishments. Then the employee's first-line supervisor reviews the employee's written assessments, adds details if warranted, and provides recommended ratings on the various areas of evaluation. Next, the second-line supervisor reviews the recommendations of the first-line supervisor. If the second-line supervisor concurs, then she will forward the evaluation to the Pay Pool Panel Manager for review and final rating. If the second-line supervisor does not concur with the recommendations

---

[17]*See* Butler Deposition, at 217-18 and Defendant's Exhibit 7.

of the first-line supervisor, then she will return it to the first-line supervisor for revision.[18]

In January of 2007, plaintiff became the "Supervisory" Contracting Officer for the program she was working on. Through May of 2007, she supervised a two-member team, comprised of Yolanda Brown and John Comminatto.[19] On May 31, 2007, plaintiff's team was reassigned to work under the supervision of Sharon Butler, a black female, for a period of sixty days. The reassignment decision was made by J.R. Richardson, a black male and the Director of Contracting, in an effort to remedy some "bottlenecks" that had developed during the processing of contracts.[20] The assignment to Butler subsequently was extended beyond the initial sixty-day period. Plaintiff was the only Procuring Contract Officer ("PCO") out of approximately ten employees that Butler supervised during the May-September 2007 time period. As a PCO, plaintiff was primarily responsible for awarding contracts, but she also had some formal supervisory responsibilities.[21] Thus, as a PCO, plaintiff had three job

---

[18]Doyle Declaration, at ¶ 6; *see also* defendant's evidentiary submission, Tab 11 (Declaration of J.R. Richardson), at ¶ 6.

[19]Savage Deposition, at 224.

[20]Butler Deposition, at 86-88, 125. The causes of the alleged "bottleneck" are disputed, but not material.

[21]Butler Deposition, at 36-38, 190-91.

objectives: (1) Customer Care; (2) Mission Accomplishment; and (3) Supervisory.[22]
During fiscal year 2007, Butler did not supervise or rate any employees, other than
plaintiff, who had a Supervisory objective.   Butler did supervise three other
employees, Thomas Artioli, Van Pinion, and Richard Marrero, all of whom were at a
GS-13 pay grade, but all of those individuals were Administrative Contracting
Officers ("ACO's").   Unlike PCO's, ACO's are primarily responsible for
administering contracts once they have been awarded by the PCO.[23]

Between May and September of 2007, plaintiff repeatedly challenged Butler's
work decisions, and suggested that Butler did not know how to do her job.[24]  Also
during this period, plaintiff was absent from work between twenty-five and fifty
percent of the time.   Of the remaining eight or nine employees under Butler's
supervision during that time period, no other employee was absent from work more
than  five to ten percent of the time.   Absenteeism is one factor that could negatively
affect an employee's work rating.[25]

---

[22]*See* Transcript of June 24, 2008 Fact Finding Conference, at 49; defendant's
evidentiary submission, Tab 15, at 208-09.

[23]Butler Deposition, at 37-38, 190-91, 209

[24]Savage Deposition, at 328-29.

[25]Butler Deposition, at 192-95.  Plaintiff asserts that Butler's testimony cannot be
credited because Butler has faulty memory and her statements about plaintiff's absenteeism
are not supported by any documentation.  However, credibility determinations are not proper
at the summary judgment stage.  Because plaintiff has not presented any evidence to dispute
Butler's testimony, the court can properly consider the testimony in ruling on summary
judgment.

In late June or early July of 2007, plaintiff initiated an equal employment opportunity (EEO) complaint alleging that Butler had been harassing her because plaintiff is a black female.  Plaintiff also alleged that she had been temporarily reassigned to Butler, another black female, so that she would not have a basis for filing a race discrimination complaint.[26]  Plaintiff also claimed that Butler questioned her competency and was setting her up for a downgrade of responsibilities and ultimate professional failure.  Butler first became aware of plaintiff's complaint in July or August of 2007.[27]  In August 2007, plaintiff expressed her concern to at least three other individuals within the Corps (but outside the EEO office) that Butler was planning to "fail her" on the upcoming 2007 evaluation form.[28]  Plaintiff filed a formal complaint of discrimination against the Corps on August 23, 2007.

The ratings cycle for fiscal year 2007 ended on September 30, 2007, but evaluations continued to be processed for a few weeks thereafter.  During the morning hours of October 4, 2007, plaintiff received an e-mail that Butler had sent to her employees, forwarding a copy of a customer care survey.  Each employee was to have their customers or clients complete the survey and return it to Butler no later than October 5, 2007.  The results of the survey would inform the employees' Customer

[26]Savage Deposition, at 99-100, and Exhibit 6.

[27]Butler Deposition, at 150.

[28]Savage Deposition, at 149, 187-89, 341-42.

Care rating, which would comprise up to forty percent of each employee's overall rating.  Savage did not supply a copy of the survey to any of her customers or clients and, consequently, there were no surveys completed for any of plaintiff's customers or clients.  It is undisputed, however, that all of the other employees under Butler's supervision initially received an email about the customer care surveys on September 25, 2007, thereby allowing them more time to have the surveys completed.  Butler does not know why plaintiff was left off the September 25th e-mail list, but she insists that the omission was not intentional.[29]

As the first step in the ratings process, plaintiff completed a "self-assessment," listing all of her accomplishments for the 2007 fiscal year and describing how each related to her employment objectives.[30]  Butler was responsible for reviewing plaintiff's self-assessment and assessing preliminary performance ratings, share assignments, and payout distributions for plaintiff. That was Butler's first time to issue recommended ratings under the new NSPS system.[31]

Before forwarding her recommendations about plaintiff's rating to plaintiff's second-line supervisor, Butler contacted Bill Hill, an in-house attorney for the Corps, for legal advice on how to proceed regarding plaintiff's evaluation.  Butler wanted

---

[29]Savage Deposition, at 290-95; Butler Deposition, at 180-84.

[30]Savage Deposition, at 261-62, 268-70, 287-88.

[31]Butler Deposition, at 186-87, 199-201.

Hill's advice because plaintiff had an EEO complaint pending against the Corps.  Hill advised Butler to rate plaintiff consistently with the other three GS-13's under Butler's supervision.[32]   Butler followed Hill's advice, and she stated the following on the assessment form:

> I support the employee's assessment and it reflects her accomplishments toward her objectives.  In addition, please note the following:
>
> Objective 1:  Supervisory (Employee exceeded objective).  Ms. Savage developed a vision for her team and was in compliance with all applicable laws, regulations and positions.  She is currently working on her PhD which will enhance her leadership skills.  Her IDP is current and she has maintained her DAFAI certification.
>
> Objective 2: Mission Accomplishment (Employee met objective).  Ms. Savage executed projects/contracts in accordance with all laws, regulations and policy.  She is one of the experts in AE contracting within the center.  She provided support to her team and tried to ensure all projects were executed in a timely manner.   She ensured all requirements were awarded as directed and coordinated with legal and small business as required.   All of her actions were reviewed for compliance prior to being forwarded to ARB or RQ.  She assigned all work to ensure successful outcomes.  During this rating period, Ms. Savage identified several areas of concern and worked to provide solutions to prevent a reoccurrence.
>
> Objective 3:  Customer Care (Employee met objective).  Ms. Savage is focused on customer care.  She developed milestones for all actions and attended all monthly PRBs.  I have received some positive comments from internal customers regarding Ms. Savage.[33]

---

[32]*Id.* at 37-38, 190, 208-12.

[33]Defendant's evidentiary submission, Tab 3-4, at 214.

14

Butler recommended that plaintiff receive a rating of "3" out of "5" in the Customer Care and Mission Accomplishment objectives, and a rating of "4" out of "5" in the Supervisory objective.[34]  Plaintiff's overall rating corresponded to her being eligible to receive two pay pool shares.  Pinion, Artioli, and Marrero all received the same scores as plaintiff, and they all were eligible for two pay pool shares.  Butler did not recommend that any single employee receive a rating of more than "4" on more than one objective for fiscal year 2007, and she did not give any employee a rating of "5" on any objective.  Furthermore, she did not recommend that any employee receive more than two shares from the Pay Pool Panel in fiscal year 2007.[35]

Butler submitted her ratings of plaintiff to Richardson, who was plaintiff's second-level supervisor, for his review.[36]  The record does not provide clear evidence of the date on which Richardson conducted this review, but the record does indicate that the scheduled date for completion of reviews by second-level supervisors was October 12, 2007.[37]  Richardson agreed with Butler's ratings recommendations, and then forwarded his recommendation to the Pay Pool Panel for review.[38]

On October 17, 2007, plaintiff and defendant entered into a Negotiated

---

[34]Butler Deposition, at 207-19.

[35]*Id.* at 209-18.

[36]*Id.* at 207-08; Richardson Declaration, at ¶ 8.

[37]Defendant's evidentiary submission, Tab 15, at 333.

[38]Richardson Declaration, at ¶ 8.

Settlement Agreement ("Settlement Agreement") on her Formal Complaint, DA Docket Number ARCEHUNTV07Jun2574.[39]   In the Settlement Agreement, plaintiff acknowledged that, in exchange for the agreed-upon terms, she settled "the claim(s) that complainant was discriminated against because of her race (Black) and gender (Female) when allegedly she was subjected to harassment (non-sexual) and hostile work environment."[40]   The Settlement Agreement also contained the following provision:

> The complainant's signature on the agreement constitutes a full and complete settlement of any and all issues and claims arising from the circumstances of the aforementioned EEO formal complaint(s), and any and all claims, grievances complaints or appeals, whether perfected or not, in this or any other forum, filed, held or claimed by the aggrieved on her behalf, relating to any matters that occurred prior to the execution of this settlement agreement.  This includes, but is not limited to, attorney's fees and costs arising from or related to the aforementioned complaint(s). The complainant agrees to voluntarily withdraw any outstanding administrative complaint, grievance or appeal, against the Huntsville Engineering & Support Center and/or any of its current or former employees.  It is understood that settlement is contingent upon those complaints, appeals, or grievances being withdrawn.  Further, it is understood that in withdrawing all appeals or complaints, complainant waives her rights to an oral hearing or further appeal on the matters raised.  It is further stipulated that the withdrawals are made without any threat, coercion, intimidation, promise, or inducement other than the

---

[39]Savage Deposition, at Exhibit 2.  Plaintiff signed the Settlement Agreement on October 10, 2007.  Defendant did not sign until October 17, 2007. *See id.* at 4, heading and ¶ 1.

[40]*Id.* at ¶ 4.

16

terms set forth in the agreement.[41]

The Settlement Agreement also states that "Complainant is aware that she is not waiving any rights or claims that may arise after the date this agreement is executed."[42] Finally, the Settlement Agreement contains two provisions regarding the completeness of the parties' agreement. It states that "[t]his writing shall comprise the entire agreement between the parties and any modification thereto must be in writing and signed by the parties."[43] It also states:

> The parties hereby acknowledge that they have had the opportunity to seek the advice of counsel, and that they sign this agreement voluntarily and with full knowledge of its terms and conditions; and *that there are no promises or agreements concerning this matter which are not contained herein.* Complainant acknowledges that she has been provided the opportunity to have questions concerning this agreement answered by her attorney, as well as the agency's management officials. The parties having signed this agreement, the same shall be considered fully executed and effective on the date signed below.[44]

Plaintiff acknowledged that both she and her attorney read and understood the Settlement Agreement, and that neither of them had any objections to the language of the Agreement.[45]   The Settlement Agreement did not contain any kind of confidentiality clause, and plaintiff admitted to discussing the settlement with at least

---

[41]*Id.* at ¶ 5.

[42]*Id.* at ¶ 7.

[43]*Id.* at ¶ 6.

[44]*Id.* at ¶ 8 (emphasis supplied).

[45]Savage Deposition, at 63-65.

six individuals, outside of EEO officers and health care professionals.[46]  There is no evidence of the content of these discussions, although plaintiff acknowledges that she did at least tell these individuals that the claim had been settled.

After October 19, 2007, plaintiff no longer was under Butler's supervision,[47] and Butler was not a member of the Pay Pool Panel who reviewed plaintiff's ratings for fiscal year 2007.  The members of the Panel were Robyn Baldwin, Cathy Bella, J.R. Richardson, Carl Stubbert, Maureen Weller, Debbie Giordano, and Colonel Norbert Doyle (the Pay Pool Manager).[48]  The Panel members reviewed the employee's and supervisor's write-ups on the employee's accomplishments as they related to their objectives.[49]  None of the panel members, other than J.R. Richardson,

---

[46]Plaintiff asserts that she only told three co-workers of the settlement.  The record belies that assertion.  Plaintiff testified during the June 24, 2008 Fact Finding Conference that she discussed the settlement with Chiquita Suggs, Wanda Cross, Anthony Gibson, and Rose Barton.  Transcript of June 24, 2008 Fact Finding Conference, at 35-37.  Lawrence Burton and Edna Sheridan, both either co-workers or former co-workers of plaintiff, testified that plaintiff informed them of the settlement.  *See* defendant's evidentiary submission, Tab 6 (Declaration of Lawrence Burton), at ¶5; *id.,* Tab 7 (Declaration of Edna Sheridan), at 2.  Plaintiff offers no evidence to refute her sworn testimony at the Fact-Finding Conference, and she does not dispute the testimony of Burton and Sheridan.  In fact, she cited to Burton's testimony in response to defendant's assertion that she had discussed the settlement with at least six co-workers.  *See* doc. no. 46 (plaintiff's brief in response to defendant's motion for summary judgment), at 14, ¶ 28.

[47]Savage Deposition, at 154-56.

[48]Defendant's evidentiary submission, Tab 15, at 538.

[49]*See* defendant's evidentiary submission, Tab 8 (Declaration of Robin A. Baldwin), at ¶ 8; *id.,* Tab 9 (Declaration of Cathy Bella), at ¶ 8; *id.,* Tab 10 (Declaration of Deborah Giordano), at ¶8; *id.,* Tab 11 (Declaration of J.R. Richardson), at ¶ 8; Doyle Declaration, at ¶ 16; defendant's evidentiary submission, Tab 13 (Declaration of Carl Stubbert), at 8; *id.,* Tab 14 (Declaration of Maureen Weller), at ¶ 6.

plaintiff's second-line supervisor, were aware of plaintiff's prior EEO activity. Richardson recommended that plaintiff receive a rating of "4" on her Supervisory Objective, while all others on the Panel recommended that plaintiff receive a "3" rating on that objective.[50]  In fact, the Panel gave plaintiff a "3" rating on all of her employment objectives.[51]  Richardson testified during the administrative Fact Finding Conference that Butler's written narrative in support of her recommendations for plaintiff was "probably a little bit weak."[52]  Furthermore, Toni Hamley, a Human Resources Manager whose responsibilities included helping supervisors comply with the requirements of the NSPS system, described Butler's write-ups as "extremely inadequate" and "very, very poorly done."[53]

In situations such as plaintiff's, where the Pay Pool Panel issued a recommended final rating that was lower than the rating recommended by the employee's first-level supervisor, the Panel would notify the first-level supervisor of that discrepancy and give the first-level supervisor the opportunity to challenge the Panel's recommendation.  If the first-level supervisor did not challenge the Panel's recommendation, the Panel's recommended rating would become final.[54]  When the

---

[50]Robinson Declaration, at ¶¶ 7-8.

[51]*See* Transcript of June 24, 2008 Fact Finding Conference, at 33.

[52]*Id.* at 73.

[53]*Id.* at 107-11.

[54]Doyle Declaration, at ¶ 11.

19

Pay Pool Panel notified Butler that her recommended "4" Supervisory rating for plaintiff was going to be downgraded to a "3," Butler reviewed plaintiff's file and decided she had no basis for challenging the Panel's decision.[55]  Doyle testified that, in his experience, when the Panel downgraded a supervisor's recommendation to a "3," the downgrade remained in place approximately eighty-five to ninety percent of the time, regardless of whether the supervisor challenged it.[56]  That said, however, Artioli and Pinion — both white male contracting officers under Butler's supervision — received a recommended "4" rating in one objective category.  The Panel proposed that both "4's" be downgraded to "3's," but Butler challenged the downgrades, and, in both instances, Butler's challenge was upheld.  Both Artioli and Pinion received a "4" rating in one category, both received overall ratings exceeding a "3," and both were awarded two shares of the Pay Pool as a result.[57]  Plaintiff received an overall rating of "3.0," and she consequently was awarded only one share of the Pay Pool, entitling her to a lower bonus than either Artioli or Pinion.[58]  Doyle testified that it was much more difficult to earn more than a "3" in a Supervisory objective than it was to earn a "3" in any of the other objectives.  According to Doyle, not one single

---

[55]Butler Deposition, at 112.

[56]Doyle Declaration, at ¶ 12.

[57]*See* Transcript of June 24, 2008 Fact Finding Conference, at 50-51; Butler Deposition, at 237-39; defendant's evidentiary submission, Tab 5, Exhibit 1, at 559, 571.

[58]*See* Butler Deposition, at 114-16.

20

supervisor out of one hundred received higher than a "3" on the Supervisory objective.[59]  For fiscal year 2007, approximately sixty-five to seventy percent of all employees reviewed by the Pay Pool Panel received an overall rating of "3" on all objectives.[60]

Plaintiff did not learn what her final rating for fiscal year 2007 would be until January of 2008.[61]  J.R. Richardson signed plaintiff's final appraisal form on October 22, 2007; Colonel Doyle signed it on January 9, 2008; and Butler signed it on January 18, 2008.[62]

On January 28, 2008, plaintiff again initiated contact with the Corps' EEO office. She   filed a Formal Complaint of Discrimination (Complaint Number ARCEHNCTV08JAN00560)  on March 12, 2008, alleging the following retaliatory actions:

> 1)      I, Tommie G, Savage, allege that I did not receive a fair appraisal.  This allegation is based on reprisal by my supervisor and rating official, Ms. Sharon Butler, as a result of the successful settlement of my EEO complaint of which Ms. Butler was one of the key management officials included in my complaint.
>
> 2)      The rating and rating official's comments are not reflective of my contributions made to the organization during my appraisal rating

---

[59]Doyle Declaration, at ¶ 9.

[60]*Id.* at ¶ 15.

[61]Savage Deposition, at 189.

[62]Defendant's evidentiary submission, Tab 3, at 24, 30.

21

period.

       3)    The rating official's comments provide no substantive documentation to justify and support objective ratings.

       4)    The rating official's comments contain language to intentionally derail my successfully exceeding the rating objectives and subsequently, my entire rating outcome.

       5)    The rating official violated the privacy act [sic] by disclosing to outside parties not directly involved in my EEO complaint or acting in any official capacity of my EEO process of her intent to fail me on my appraisal and discussions between her and the agency attorney, Mr. William (Bill) Hill, who at that time advised her against doing so.

Plaintiff demanded to receive "a fair and equitable appraisal that is consistent with what I have received in the past," in addition to compensatory damages, attorney's fees, and costs.[63]

The Corps conducted a Fact Finding Conference, during which sworn testimony was taken, on June 24, 2008.[64]  Plaintiff requested a hearing before an administrative judge with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2008.[65]  She filed her complaint with this court on November 21, 2008,[66] and she withdrew her request for an EEOC hearing on November 25, 2008.[67]

---

[63]Doc. no. 12, at Exhibit 1 (Formal Complaint of Discrimination).

[64]*See* Transcript of June 24, 2008 Fact Finding Conference.

[65]Doc. no. 12, at Exhibit 3.

[66]*See* doc. no. 1 (Complaint).

[67]Doc. no. 12, at Exhibit 4.

# III. DISCUSSION

**A.     Retaliation**

Plaintiff claims that defendant retaliated against her for filing an EEO complaint "by significantly reducing her annual performance appraisal causing a loss of pay and promotional opportunities."[68]

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents,* 212 F.3d 571, 586 (11th Cir. 2000).  A plaintiff generally must prove three elements to establish a *prima facie* case of retaliation:  (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action. *See, e.g., Shannon v. BellSouth Telecommunications, Inc*., 292 F.3d 712, 715 (11th Cir. 2002).

> Once plaintiff establishes a prima facie case [of retaliation] by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer  a legitimate reason for the adverse action . . . . The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.

*Sierminski v. Transouth Financial Corporation*, 216 F.3d 945, 950 (11th Cir. 2000) (citations omitted).

---

[68]Complaint, at ¶ 30.

Defendant asserts that, even if plaintiff could establish a *prima facie* case of retaliation, summary judgment still is due to be granted in his favor because he presented legitimate, non-retaliatory reasons for any employment decisions made with regard to plaintiff. More specifically, defendant asserts that plaintiff received a lower rating in fiscal year 2007 than she had received in past years because the Corps had switched to the NSPS rating system, which did not allow for as many top ratings as the prior system, TAPES. Achieving a rating of higher than "3" under NSPS was very difficult and required a showing of uniquely significant accomplishments that reflected a level of performance beyond satisfaction of the normal requirements of the position. Plaintiff did not demonstrate any such accomplishments. Furthermore, she had repeatedly challenged Butler's authority and competence, and she frequently was absent from work. In any event, Butler and Richardson, the only two individuals with input into plaintiff's 2007 rating who also had knowledge of her prior EEO complaint, recommended that she receive a higher rating than what the members of the Pay Pool Panel (none of whom were aware of plaintiff's prior protected activity) ultimately awarded her. When Butler had an opportunity to challenge the Pay Pool Panel's decision to downgrade plaintiff's recommended Supervisory rating from a "4" to a "3," Butler declined to do so because she had no further information to provide to the Panel that might improve plaintiff's rating.

24

Because defendant has offered legitimate, non-retaliatory reasons for assigning plaintiff's performance rating and bonus for fiscal year 2007, plaintiff can survive summary judgment on her retaliation claim only if she comes "forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973)).  Plaintiff's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendants' proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct . . . .'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Chapman v. AI Transport*, 229 F.3d 1023, 1024-25 (11th Cir. 2000) (*en banc*).  Plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal

25

quotation marks omitted).

Plaintiff has not rebutted any of defendant's proffered reasons "head on." *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("The plaintiff must meet the reason proffered head on and rebut it."). She has offered no evidence of significant accomplishments beyond satisfaction of the basic requirements of her job, or, perhaps more significantly, beyond what other employees with similar ratings had achieved. She acknowledges challenging Butler's authority and competence, and she offers no evidence, aside from her own conclusory allegation, to refute the assertion that she was frequently absent from work. Furthermore, she agrees that all of the individuals on the Pay Pool Panel who recommended she receive a final overall rating of "3" were unaware of her prior protected activity.

Nonetheless, plaintiff argues that defendant's proffered reasons are pretextual because she "received an overall average rating of 3.0 while her similarly situated GS-13 counterparts all received average ratings of 3.4 or higher," and because she "received only one share [of the Pay Pool] while her counterparts received 2 shares each."[69]

As an initial matter, the individuals plaintiff identifies as her "counterparts" are not "similarly situated" to her, as she asserts. The following is a concise summary of

---

[69]Doc. no. 78 (plaintiff's revised response to defendant's motion to dismiss or, in the alternative, motion for summary judgment), at 21.

the Eleventh Circuit's guidance on what is required to show that two employees are

similarly situated:

> "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).   "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotations and citations omitted).   We require that the quantity and quality of the comparator's misconduct be *nearly identical* to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

*Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (emphasis supplied).

Thus, in the context of a disparate discipline claim, a plaintiff must show that

employees outside her protected class were found guilty of the same or "nearly

identical" misconduct, yet were disciplined in different ways.   *Id.*; *see also, e.g.,*

*Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("The

most important factors in the disciplinary context . . . are the nature of the offenses

committed and the nature of the punishments imposed.").   "Absent some other

similarly situated but differently disciplined worker, there can be no disparate

treatment." *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Walker v.*

27

*Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998) (holding that "a Title VII plaintiff cannot succeed in proving that [he] was intentionally discriminated against if [he] does not establish a prima facie case of discrimination").  Even though the plaintiff in this case is alleging retaliation in the form of a low performance rating, instead of termination or other disciplinary action, the same principles apply to determine whether her alleged comparators were sufficiently similarly situated. Thus, plaintiff must point to individuals who did not engage in any protected EEO activity, and who also were in "nearly identical" situations with respect to their employment ratings.

Plaintiff identifies Artioli and Pinion as her allegedly "similarly situated" comparators.  It is true that both of these individuals were GS-13's under Butler's supervision, and that neither of them engaged in protected activity.  Even so, neither Artioli nor Pinion had a supervisory objective as part of their rating evaluation process, and neither served as a Procuring Contract Officer.  Plaintiff has offered no evidence to refute defendant's assertions that the Supervisory objective was the most difficult objective, and that *no* employee under Butler's supervision received higher than a "3" rating in that objective.  Therefore, comparing plaintiff to Artioli and Pinion simply is not the same thing as comparing "apples to apples," and pointing to the fact that Artioli and Pinion received a higher overall rating score than plaintiff is not enough, standing alone, to establish pretext.

28

Plaintiff also relies upon a theory that Butler concocted an elaborate scheme to award plaintiff an overall rating of "3," for the purpose of ensuring that plaintiff would be entitled to only one share of the Pay Pool and receive a lower bonus.[70]   The evidence simply does not support that theory.  Plaintiff alleges that Buler's write-up in support of her evaluation was "weak" and "extremely inadequate," but it is undisputed that *Butler adopted plaintiff's self assessment in its entirety, completely endorsed plaintiff's description of her accomplishments*, and also wrote an additional page of material to support her recommendations.  Furthermore, even if Butler's write-up in support of plaintiff's evaluation was "weak" or "inadequate," there is no evidence that Butler's write-ups for other employees were any stronger or more detailed.  The evidence plaintiff has presented establishes, if anything, that Butler was not a thorough evaluator.  It does not indicate any retaliatory intent.

Similarly, the fact that Butler chose not to supplement her evaluation of plaintiff after the Pay Pool Panel voted to downgrade plaintiff's Supervisory rating from a "4" to a "3" does not establish retaliatory intent.  Plaintiff has not identified what additional information she thinks Butler should have included, and her conclusory allegation that Butler should have done more is not sufficient.  This is true even

---

[70]The court notes that a "3" rating is not a negative rating.  Any employee receiving a "3" under NSPS is considered a "Valued Employee."  The only problem is that an employee receiving higher than a "3" would receive a larger bonus.

though Butler did challenge the Panel's decision for other GS-13's under her supervision who had not engaged in protected activity.  As discussed *supra*, none of those alleged comparators actually are similarly situated to plaintiff.

Nor do plaintiff's allegations that Butler prevented her from participating in a customer satisfaction survey, developing a performance plan, or performing the supervisory functions of her job indicate retaliatory intent.  With regard to the customer satisfaction survey, while Butler acknowledged that plaintiff did not receive as much notice of the survey's due date as did other employees, plaintiff still had almost two days to complete the survey.  Even so, she did not make any attempt to do so, *and she did not request an extension of the deadline*.  Furthermore, there is no evidence that either the performance plan or Butler's alleged efforts to interfere with plaintiff's ability to perform her supervisory job functions adversely affected plaintiff's rating.  To the contrary, Butler actually recommended that plaintiff receive a higher score on the Supervisory objective than on any other objective.  Finally, plaintiff's "well documented history of customer service, integrity and stellar work performance"[71] has no bearing on her performance during the 2007 fiscal year, especially considering that the Corps switched to the NSPS system in 2007.  It is undisputed that achieving a top rating under NSPS was much more difficult than it

---

[71]Doc. no. 78, at 22.

was under TAPES, and that a majority of employees received the exact same rating that plaintiff received in 2007.

In conclusion, plaintiff cannot establish that defendant's proffered legitimate, non-discriminatory reasons for awarding her an overall rating of "3" for fiscal year 2007 actually were a pretext for retaliation. Consequently, summary judgment is due to be granted on her retaliation claim under both Title VII and § 1981. Because summary judgment will be granted on the merits of plaintiff's retaliation claim, the court need not evaluate the validity of defendant's affirmative defense of accord and satisfaction. Further, because the court will not be considering the accord and satisfaction defense, the court need not consider the affidavit of Mark Conrad. Accordingly, both motions directed to those issues — *i.e.,* plaintiff's motion to dismiss the accord and satisfaction affirmative defense and defendant's motion to strike the Conrad affidavit — will be denied as moot.

**B.    Privacy Act**

The Privacy Act provides that, with certain limited exceptions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ." 5 U.S.C. §552a(b).

31

[I]n order to maintain a suit for damages under the catch-all provision of 5 U.S.C. § 552a(g)(1)(D)[72] for a violation of the Act's central prohibition against disclosure, § 552a(b), a plaintiff must advance evidence to support a jury's finding of four necessary elements: (1) the information is covered by the Act as a "record"[73] contained in a "system of records";[74] (2) the agency "disclose[d]" the information; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was "willful or intentional."

*Quinn v. Stone*, 978 F.2d 126, 131 (3rd Cir. 1992).  The plaintiff "has the burden to

---

[72]This section provides that,

> [w]henever any agency
>
> . . . .
>
> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such as a way as to have an adverse effect on an individual,
>
the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters . . . .

5 U.S.C. § 552(g)(1)(D).

[73]A "record" is defined as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(4).

[74]A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(5).

32

prove that there has been a violation of the Privacy Act." *Edison v. Department of the Army,* 672 F.2d 840, 842 (11th Cir. 1982).

To support her Privacy Act claim, plaintiff alleges that "Butler disclosed the terms of her settlement agreement, including the amount of her award, to Edna Sheridan and shared with Sheridan her plan to downgrade Plaintiff's appraisal."[75] The only *admissible* evidence plaintiff offers to support her claim is a series of email exchanges between Sheridan and Butler.[76]  On October 24, 2007, Brenda Hatley, the Executive Liaison Officer, sent a mass email to a mailing list that apparently included Butler.  The email bore the title "Huntsville Center Small Business Officer Named," and it stated, "Ms. Tommie Savage reported to work this past Monday as the Center's Small and Disadvantaged Business Utilization Specialist.  Tommie is displacing Judy Griggs who retired in April.  Tommie will be working with Delores Foster over the next few weeks to make the transition to this new position."[77]  That same day, Butler forwarded the message to Sheridan.  Sheridan responded on October 25, 2007: "Does

---

[75]Doc. no. 78, at 23.

[76]Plaintiff also seeks to rely upon testimony that Edna Sheridan, a co-worker, told plaintiff that Butler had told Sheridan that Butler planned to fail plaintiff on her upcoming fiscal year 2007 evaluation.  Sheridan also allegedly told plaintiff that Butler had told her about some of the details of plaintiff's settlement agreement with the Corps, including the settlement amount and the name of the agency attorney with whom plaintiff consulted.  This testimony cannot be considered, because it is hearsay.  Furthermore, the evidence could not be presented in admissible form at trial, because both Sheridan and Butler deny making the statements plaintiff attributes to them.

[77]Doc. no. 70, Tab I (Exhibit 8), at 1.

33

this mean she is a GS-14?  Is this part of her case settlement?  What is the status?"[78]

Butler responded to that inquiry on October 25, 2007:  "Yes, but I think she is still a

13.  We need to talk.  I am in Atlanta on TDY."[79]  On October 26, 2007, Sheridan

responded: "OK.  When is a good time?  I am currently in Doha (for 10 or more days)

headed to Afghanistan."[80]  Butler responded on October 26, 2007, suggesting a time

when Sheridan could reach her.  Butler also stated, "If you miss me, keep trying.  Lots

to discuss."[81]  In a separate email, on February 7, 2008, Butler wrote to Sheridan:

"Tommie has filed another grievance against me."[82]  Finally, on May 28, 2008,

Sheridan received a notification from Sonja Rice, an EEO Specialist for the Corps, that

her presence was required at a Fact Finding Conference regarding plaintiff's complaint

against Butler.  Sheridan forwarded that email to Butler, without comment, on May

29, 2008.[83]

This evidence is insufficient to satisfy plaintiff's burden of proving each

element of a claim for unlawful disclosure pursuant to the Privacy Act.  The only

information plaintiff can prove that Butler actually shared with Sheridan was that

---

[78]*Id.*

[79]*Id.*

[80]*Id.*

[81]*Id.*

[82]*Id.* at 3.

[83]*Id.* at 4.

34

plaintiff had transferred to the position of Small and Disadvantage Business Utilization Specialist, that the transfer was "part of her case settlement," that plaintiff still was a GS-13, and that plaintiff filed a second grievance against Butler in February of 2008. It would defy logic for the fact of plaintiff's transfer to be protected by the Privacy Act, as that fact would be apparent to any person who ever worked with plaintiff. *See Quinn,* 978 F.2d at 134 ("[T]he Act is not violated where the agency makes available information which is already known by the recipient.") (citations omitted). Further, plaintiff makes no argument as to why her employment grade, the fact that her transfer resulted from her settlement, and the fact of her second grievance against Butler should be considered "records" contained in a "system of records," as those terms are defined by the Privacy Act. Even if those items could be considered "records," there is no evidence that they were "disclosed" in violation of the Privacy Act. Information is "disclosed" in violation of the Privacy Act only if the person disclosing it actually learned of it from a protected "record." *See Pippinger v. Rubin,* 129 F.3d 519, 530-31 (10th Cir. 1997) ("[T]he Privacy Act does *not* prohibit disclosure of information or knowledge obtained from sources other than 'records.' . . . In particular, it does not prevent federal employees or officials from talking — even gossiping — about anything of which they have non-record-based knowledge.") (citation omitted) (emphasis in original). There is no evidence that Butler had actual

knowledge of the terms of plaintiff's Settlement Agreement.  Plaintiff also offered no
evidence or argument with regard to adverse effect, causation, or willfulness.  She did
not even allege in her complaint that the disclosure was willful.  She did allege that,
as a result of defendant's Privacy Act violation, she "suffered irreparable harm,
including but not limited to medical issues, embarrassment, humiliation, a less
favorable annual appraisal, loss of a greater salary increase, which ultimately results
in a lower retirement pay and loss of self-esteem within the work environment and
damage to her heretofore stellar professional reputation."[84]  However, she offered no
proof of any of these alleged damages, or of their connection to defendant's alleged
unlawful disclosure.  The court also notes that plaintiff herself disclosed certain
information about her settlement to up to six other employees.  Even if there was
evidence that plaintiff suffered the damages she alleged, it would be difficult to
discern whether those damages resulted from defendant's disclosures or from
plaintiff's own disclosures.[85]

   In summary, plaintiff has not offered sufficient evidence to support her Privacy

---

[84]Complaint, at ¶ 36.

[85]The court notes that plaintiff's Privacy Act claim suffers another flaw.  The proper
defendant to a Privacy Act disclosure claim is the offending agency itself, not a
representative, or even the head, of the agency.  *Doe v. Naval Air Station, Pensacola,
Florida*, 768 F.2d 1229, 1231 n.1 (11th Cir. 1985).  For the Privacy Act claim, plaintiff
should have sued the Department of the Army as an entity, not Pete Geren, the Secretary of
the Army.

Act claim.  Defendant's motion for summary judgment on that claim is due to be granted, and plaintiff's motion for summary judgment on that claim is due to be denied.

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion to dismiss defendant's affirmative defense of accord and satisfaction, and defendant's motion to strike the affidavit of Mark Conrad or, in the alternative, to disqualify Mr. Conrad from further representation of plaintiff, both are DENIED as moot.  Plaintiff's alternative motion for summary judgment on all of her claims is DENIED.  Defendant's motion to dismiss, or, in the alternative, for summary judgment, is GRANTED.  It is ORDERED that all of plaintiff's claims are DISMISSED with prejudice.  Costs are taxed to plaintiff.  The clerk is directed to close this file.

DONE this 15th day of November, 2010.

_____
United States District Judge